**United States District Court**
**District of Massachusetts**

| | | |
|---|---|---|
| **Abdul Sesay,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Civil Action No. 26-14231-NMG** |
| **Konstantinos Diamantakos, et al.,** | ) | |
| **Respondents.** | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from the petition for writ of habeas corpus (Docket No. 1) of petitioner Abdul Sesay ("Sesay" or "petitioner"). He contends that Konstantinos Diamantakos and other named respondents ("respondents") have violated his statutory, regulatory and due process rights as an immigrant by revoking his Order of Supervision ("OSUP") and detaining him pending removal.

Respondents maintain that petitioner's detention is statutorily authorized and constitutional because U.S. Immigration and Customs Enforcement ("ICE") lawfully revoked his supervised release on two separate grounds: (1) petitioner violated a condition of his OSUP, and (2) because of a change of circumstances, there is a significant likelihood that petitioner may be removed to Sierra Leone in the reasonably foreseeable

future. For the reasons that follow, Sesay's petition will be allowed.

**I. Facts**

Petitioner is a citizen of Sierra Leone. He was admitted to the United States in August, 1989 as a temporary visitor for pleasure with authorization to remain in this country until February 23, 1990. Petitioner remained in the United States beyond that date without authorization from the Immigration and Naturalization Service ("INS") or its successor, the Department of Homeland Security ("DHS"). He was granted Temporary Protected Status on August 25, 1998, but that expired on November 3, 1998.

In August, 2013, petitioner had an individual hearing before the Executive Office for Immigration Review, at which he was ordered removed. On February 28, 2014, petitioner was released subject to an OSUP. Under that OSUP, petitioner was permitted to remain at large on the condition that, inter alia, he "not commit any crimes while on this Order of Supervision."

More than one year before the OSUP issued, on December 26, 2012, petitioner was arrested and arraigned in the Dorchester Division of the Boston Municipal Court on charges that included operating under the influence of liquor. Petitioner's submissions indicate that he moved to suppress the evidence and denied the allegations against him. Respondents submitted a

Massachusetts criminal history record which reflects that the charge was continued without a finding on April 8, 2014, and dismissed on April 8, 2015. Neither party has submitted the underlying docket or a transcript of a plea colloquy.

Respondents have submitted an Emergency Travel Certificate, dated September 8, 2026, issued by the Consular Section of the Embassy of Sierra Leone in Washington, D.C. Petitioner was detained by ICE on or about Monday, September 14, 2026, apparently while reporting to the agency as required by his OSUP. On the same day, ICE revoked petitioner's release. According to the Notice of Revocation ("Notice"), it was signed by an ICE official at 1:56 P.M. and served on petitioner in a hold room at 3:00 P.M. It stated that his supervised release had been revoked, pursuant to 8 C.F.R. § 241.13(i), on the grounds that (1) he had violated a condition of his release because, "[o]n or about 4/8/14, [he was] convicted of operate [sic] under the influence of liquor," and (2) circumstances had changed such that there was a significant likelihood of removal in the reasonably foreseeable future because ICE had obtained a travel document.

Although the Notice indicated that ICE had scheduled petitioner's removal to take place "no later than" a specified date, the date field was left blank. ICE's record of the interview states that petitioner "[r]efused to speak without

consulting attorney" and provided no written statement or documents.

Petitioner filed an amended petition for writ of habeas corpus on September 17, 2026. Respondents oppose the petition, and petitioner has replied, asserting that his detention is unlawful because respondents failed to follow the regulations governing the re-detention of an individual subject to an OSUP and that due process entitles him to a hearing before an Immigration Judge.

## II. Legal Standard

When a non-citizen is released on an OSUP pursuant to 8 C.F.R. §241.13, that release can be revoked on two separate grounds: violation of the conditions of release or changed circumstances. See 8 C.F.R. § 241.13(i).

Under the former ground, any non-citizen who has been released but subsequently violates a condition of such release, "may be returned to custody." 8 C.F.R. § 241.13(i)(1). Under the latter ground, ICE may revoke the non-citizen's release and return him or her to custody

> if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.

8 C.F.R. § 241.13(i)(2).

Whether ICE revokes release because the non-citizen violated a condition of release or because of changed circumstances, the regulations require ICE (1) to notify the non-citizen, upon revocation, of the reasons for revocation of his or her release and (2) to conduct a prompt, informal interview to afford the non-citizen an opportunity to respond to the reasons for revocation stated in the notice. 8 C.F.R. § 241.13(i)(3). The detainee may submit any evidence or information that he or she believes shows there is no significant likelihood he or she will be removed in the reasonably foreseeable future, or that he or she has not violated the OSUP. Id. The regulation further provides that

> [t]he revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).

Revocation of release under §241.13 on the basis of changed circumstances requires

> (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future.

Kong v. United States, 62 F.4th 608, 619-20 (1st Cir. 2023) (citing 8 C.F.R. §241.13(i)(2)). The regulation vests that determination in ICE and

> does not allow a court in the first instance to make the required individualized finding.

Id. at 620. When ICE makes such a finding, the court reviews it under the relevant regulations. Id. Although a habeas petitioner generally bears the burden of demonstrating that his detention is unlawful, Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009), the government bears the burden of demonstrating that ICE properly made the applicable determination pursuant to §241.13(i). Nguyen v. Hyde, 788 F. Supp. 3d 144, 150 (D. Mass. 2025).

ICE, along with other governmental agencies, has a duty to comply with its own federal regulations. See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 266-68 (1954); Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017). A court may not sustain agency action on a ground not relied upon by that agency. See SEC v. Chenery Corp., 318 U.S. 80, 95 (1943). Accordingly, where an agency rests its decision on more than one ground and one of them is deficient, that decision may be sustained only if the record makes clear that the agency would have reached the same result on the remaining ground. See Nat'l Fuel Gas Supply Corp. v. FERC, 468 F.3d 831, 839 (D.C. Cir. 2006).

## III. Discussion

### A. Violation of a Condition of Release

In revoking petitioner's release, ICE invoked §241.13(i)(1) on the ground that petitioner was convicted of operating under the influence on or about April 8, 2014, thereby violating the condition that he "not commit any crimes while on this Order of Supervision."

The record does not support revocation on that basis. By its own terms, the condition in petitioner's OSUP is prospective, i.e., it contemplates crimes committed "while on this Order of Supervision," rather than conduct which preceded the issuance of the OSUP. The offense underlying the charge at issue here occurred on December 26, 2012, more than one year before the OSUP issued. That the charge was not resolved until after the OSUP issued does not transform the conduct into a crime committed "while on" supervision.

Furthermore, respondents' submission itself does not allege that a "conviction" occurred. Rather, it reflects that the 2012 charge against petitioner was continued without a finding and later dismissed. The Court need not decide whether that disposition would constitute a "conviction" for purposes of federal immigration law, see 8 U.S.C. §1101(a)(48)(A), because, as explained above, the condition of release is contingent on

the commission of a crime during the period of supervision, not on the timing of any adjudication.

Accordingly, the revocation of petitioner's release cannot be sustained on the ground that he violated a condition of his OSUP.

**B. Revocation Procedures**

1. Notice and Custody Review

Petitioner asserts that respondents did not comply with the regulations governing the revocation of his release because ICE did not serve the Notice until after petitioner was detained. That contention is unavailing. The plain text of §241.13(i)(3) directs notice to be served "[u]pon" revocation, and thus, service of the Notice after petitioner was detained does not violate the regulation.

Respondents have not demonstrated, however, that ICE conducted the revocation custody review that §241.13(i)(3) separately requires. In that review, ICE must evaluate any contested facts relevant to the revocation and determine whether the facts, as found, warrant revocation and further denial of release. See 8 C.F.R. §241.13(i)(3). Here, the record reflects that ICE served the Notice and conducted the informal interview within hours of petitioner's detention. Beyond that, the record is silent. Indeed, nothing in the Notice indicates that ICE evaluated the facts underlying the violation stated therein or

made any determination as to whether those facts warranted revocation.

That petitioner declined to speak at the informal interview does not cure the deficiency with respect to the review. To be sure, §241.13(i)(3) requires ICE to afford the detainee an opportunity to respond but does not require the detainee to avail himself of that opportunity. Nevertheless, the revocation custody review is not contingent upon the detainee's participation, and the criminal history record that respondents themselves submitted does not reflect the conviction on which the Notice relies.

2. Changed Circumstances

Respondents contend that revocation was independently warranted under §241.13(i)(2) because ICE obtained a travel document from Sierra Leone six days before petitioner was re-detained. The travel document may ultimately support revocation, and the Court does not now decide otherwise, but it cannot make the changed-circumstances determination on behalf of ICE. See Kong, 62 F.4th at 620. Furthermore, respondents have not shown that ICE made that determination independently of the unsupported charge of a violation.

Respondents have submitted the Notice, the interview record and the travel document but have not submitted any declaration or other evidence describing how ICE made its determination.

The Notice checks off both grounds, i.e., violation of a condition of release and changed circumstances, without indicating whether either was considered sufficient by itself, and it leaves blank the alleged, previously-scheduled date for petitioner's removal. On that record, the Court cannot conclude that ICE would have revoked petitioner's release on the changed-circumstances ground alone. See Chenery, 318 U.S. at 95; Nat'l Fuel Gas Supply Corp., 468 F.3d at 839.

The First Circuit has not decided whether a showing of prejudice is required before a court may grant relief for an agency's failure to follow its own regulations. See Nelson v. INS, 232 F.3d 258, 262 (1st Cir. 2000). The Court need not resolve that question here, however, because, for the reasons stated above, it cannot conclude that ICE would have revoked petitioner's release in the absence of the unsupported ground.

In any event, respondents have not demonstrated that ICE revoked petitioner's release in compliance with 8 C.F.R. §241.13(i).

### C. Remedy

Several sessions of this Court, including this one, have previously ordered immediate release of petitioners for §241.13 violations. See, e.g., Munagi v. McDonald, 813 F. Supp. 3d 225, 227, 229 (D. Mass. 2025) (concluding that ICE did not comply with regulations where it obtained travel document after serving

notice of revocation); Huynh v. Wesling, No. 25-CV-13794-AK, 2026 WL 183467, at *7 (D. Mass. Jan. 23, 2026). See also Pedraza v. Wesling, No. 1:26-CV-12640-ADB, 2026 WL 2322662 (D. Mass. Aug. 11, 2026) (collecting cases).

Unlike in those earlier cases, respondents here have demonstrated that ICE obtained a facially valid travel document before petitioner was re-detained. That distinction bears on whether ICE may revoke petitioner's release anew. It does not, however, render petitioner's present detention lawful. Given that the revocation of petitioner's release did not comply with §241.13(i), it cannot stand, and the detention of petitioner is therefore unauthorized. The proper remedy for detention that does not comply with 8 U.S.C. §1231 and applicable regulations is release from custody. See Rombot, 296 F. Supp. 3d at 388-89.

Because petitioner is entitled to relief on his regulatory claim, the Court need not reach his contention that the Due Process Clause independently requires a hearing before an

Immigration Judge. See Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 347 (1936) (Brandeis, J., concurring).

**ORDER**

For the foregoing reasons, the amended petition for writ of habeas corpus (Docket No. 5) is **ALLOWED.** Petitioner, Abdul Sesay, is to be released under the conditions set forth in his Order of Supervision dated February 28, 2014.

Nathaniel M. Gorton
Senior United States District Judge

Dated: October 6, 2026